## SAITCH v. KELLEY.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1913.)

1. SALES (§ 467*)—CONDITIONAL SALES—CONSTRUCTION—QUESTIONS FOR COURT.

Where there is no evidence of intent nor any disputed facts, the construction of the waiver in a contract, providing that a purchaser waived all the benefits of the provisions of the Lien Law (Consol. Laws 1909, c. 33), the printed blank on which the contract was drawn having been printed when such provisions were contained in the Lien Law, but which provisions when the contract was drawn had been repealed and re-enacted in the Personal Property Law (Consol. Laws 1909, c. 41), was solely for the court.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1354, 1358–1364; Dec. Dig. § 467.*]

2. SALES (§ 467*)—CONDITIONAL SALES—FORFEITURES—CONSTRUCTION.

A contract drawn by a vendor which is designed to work a forfeiture of goods sold and money paid thereon on certain conditions is to be strictly construed against the vendor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1354, 1358–1364; Dec. Dig. § 467.*]

Appeal from Trial Term, Monroe County.

Action by Joseph Saitch against Elmer W. Kelley. Judgment for defendant, and plaintiff appeals. Reversed.

The action was commenced on the 24th day of February, 1912, to recover the sum of $415 which had been paid to the defendant by the plaintiff's predecessors in interest under a contract of conditional sale of an automatic player piano.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Merle L. Sheffer, of Rochester, for appellant.
Charles B. Bechtold, of Rochester, for respondent.

McLENNAN, P. J. There is practically no dispute in the evidence. On July 28, 1910, the defendant sold to one Charles Fine the piano in question under a contract of conditional sale, which, among other things, provided that the purchase price of $983 should be paid in monthly installments, and that the title to the piano should remain in the defendant until the purchase price had been paid in full. After Fine had paid $115 on the contract, he assigned his interest therein for a valuable consideration to one Frank Mildahn. The defendant thereupon procured from Mildahn a new contract, reciting the previous payment of $115 by Fine. Thereafter Mildahn assigned his interest therein to one Samuel Finkelstein. Prior to the assignment Mildahn had paid defendant $270 on account of the contract, making a total of $385 at that time which had been paid to defendant. The defendant procured from Finkelstein a new contract, bearing date August 1, 1911, reciting previous payments of $385, and taking from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Finkelstein notes payable monthly for the balance of $598. This contract contained the following provisions, among others not material here:

"This contract cancels and takes the place of contract dated Dec. 5, 1911, signed by Frank Mildahn, who assigns all his right and equity in said instrument to undersigned Samuel Finkelstein, whose residence address is 114 Reynolds St., City of Rochester, N. Y."

"Should there be any failure to pay drafts or other demand of cash payment, and to execute such notes for deferred payments when presented, it is agreed that the full amount of the purchase price shall at once become due and payable.

"Should there be any default in the payment of any notes, it is agreed that all the remaining shall at once become due and payable, anything in the notes to the contrary notwithstanding. In the default of any notes you or your agents may take possession of, and remove said Inst. without legal process, and in such a case all payments heretofore made by the undersigned under this order, shall be deemed and considered as having been made for the use of said instrument, during the time said instrument remains in the possession of the undersigned and shall be retained and kept by E. W. Kelley as such payments, and for myself and successors in interest, I waive the benefit of all provisions of the Lien Law, and any cause of action thereby given."

Finkelstein paid one note of $30, and then sold his interest in the piano to the plaintiff, together with all stock of wines, whiskies, cigars, etc., by bill of sale dated September 29, 1911. Default occurred in the payment of the notes due on October 1, November 1, and December 1, 1911, and thereafter defendant took possession of the instrument, and removed it to his place of business, where it remained at the time of the trial; no further proceedings as to the sale of the instrument having been taken by defendant. It appears that the defendant recovered judgment against Finkelstein at some time prior to the trial for the balance of the purchase price. Plaintiff's attorney testified that in about the first week of October, 1911, he told defendant's office manager the interest that his client had in the piano in question, but the nature or character of such interest as claimed in such conversation is not disclosed.

Plaintiff alleged in his complaint that more than 60 days had elapsed since defendant had taken possession of the piano, and that the defendant had not sold the piano at public auction as provided by section 65 of the Personal Property Law, nor served any notice of such sale as provided by section 66 of that law.

Defendant by his answer admitted that he did not sell the piano or give any notice of any kind to the plaintiff, but alleged that in waiving the benefit of all provisions of the Lien Law the plaintiff's assignor intended to and did waive all the benefits of the provisions of the Personal Property Law. Defendant further alleged that plaintiff abandoned the piano and that for that reason defendant had taken possession of it, and further set up a counterclaim for the use of the piano by plaintiff and his predecessors in the sum of $415. It is stated in defendant's brief that the contract between defendant and Finkelstein was made on one of the old printed forms used by the defendant at the time when the provisions relating to conditional sales were a part of the Lien Law, and such statement is not controverted

by plaintiff's attorney. When the Consolidated Laws were enacted in 1909, the several sections of the former Lien Law relating to contracts of conditional sale were repealed, and the same sections were then enacted as a part of the Personal Property Law, where they have since remained. So that the waiving of the provisions of the Lien Law by the plaintiff's assignor is claimed by defendant to be practically meaningless, unless it be held that the Personal Property Law was thereby intended to be referred to.

The court charged the jury as follows:

"They are supposed, when they made that contract, when they signed that paper, to know that the provision which was formerly in the Lien Law was in the Personal Property Law at present, and the question is, Did they understand they were to waive that provision which had existed in the Lien Law and which is in the Personal Property Law now? If so, they did waive it, and, if Finkelstein waived it, he did not confer any further right on Saitch than he had, and, if he had no right to enforce it, Saitch had none, because he holds under Finkelstein. * * * If there was a waiver, then defendant is entitled to a verdict. * * * Unless there is a waiver, the plaintiff is entitled, under the statute, for the money paid in on the purchase price. I leave it for you to say."

To this charge plaintiff excepted, and such exception presents the only important question to be considered upon this appeal.

[1] We think the court erred in leaving the interpretation of the contract to the jury. There was no evidence of intent before the court, except as is to be gathered from the contract itself. There were no disputed facts upon this question, and it was therefore a question of law for the determination of the court. The language employed was plain and unambiguous, and, if by waiving the provisions of the Lien Law the plaintiff's assignor really waived no rights, the defendant cannot complain.

[2] He is seeking to have enforced a contract which, as he alleges, contains provisions designed to work a forfeiture of the rights of the plaintiff, and the defendant should in such case be the one to suffer if the contract prepared by himself does not accomplish that result. The court should not, nor should the jury be permitted to, infer any provisions in defendant's favor not found in the contract itself, to uphold a waiver of the provisions of the statute. Contracts of this sort containing waivers of the purchaser's rights have been considered by the courts in several cases, but have always been strictly construed against the vendor.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed and new trial granted with costs to appellant to abide event. All concur.