Nathan R. Sobel, S.
The question is whether adopted children are included among “ descendants ” of a sister of testator, Andrew Henderson, who died in 1914. Testator had created a trust for three of his sisters as primary beneficiaries. The concern here is with only one of such sisters, Jennie Neumann. During her lifetime she was to receive one third of the income from the trust. If she died while the trust continued, her “ descendants ” would then receive her one-third share of the income. Upon the termination of the trust, her “ descendants ” (hers was one of two measuring lives) would receive a one-third share of the corpus. The trust yet continues, one of the measuring lives being in existence.
Jennie died in 1966. She had four children. One of these, William, predeceased Jennie, leaving as his only issue two *282 adopted children. The narrow issue is whether such adopted children are “descendants” of Jennie under a will executed in 1913 and which became effective in 1914. If they are, they are presently entitled per stirpes to one twelfth of the income and will ultimately be entitled to one twelfth of the corpus. If they are not, then the other three natural children of Jennie or their descendants will share one ninth each of the income and corpus.
It might also be noted that there are here no protagonists. The trustee has requested construction. The total trust is $24,000. The issue concerns one twelfth of the trust ($100 income per year and ultimately $2,000 in principal). Only the guardian ad litem for one of the adopted children has submitted a brief. A general discussion of the principles involved is nevertheless required.
Adoption per se was unknown to the common law and exists solely by force of statutes (Matter of Thorne, 155 N. Y. 140; Binavince “Adoption: Descent & Distribution”, 51 Cornell L. Q. 152 [1966]). A good history of adoption statutes in this State may be found in United States Trust Co. v. Hoyt (150 App. Div. 621). It is simply noted that the first general adoption statute was enacted in 1873 (L. 1873, ch. 830).
In enacting this and successor statutes, the Legislature was not much concerned with testamentary dispositions to adopted children. A testator could omit or include adopted children as he could as well his natural children. This was his concern. The Legislature was much more concerned with intestate succession and beginning with the earliest adoption laws was required and did make provision for the rights of adopted children to inherit from their foster (now “ adoptive”; L. 1970, ch. 570) parents.
The earliest statutes denied to the adopted child the right to intestate inheritance (L. 1873, ch. 830, § 10; L. 1884, eh. 438, § 8). But commencing with 1887 (L. 1887, ch. 703) a statute and successor statutes gave the adopted child and his heirs and next of kin the right to inherit from the foster parents. No express provision however gave such adopted child the right to inherit through the foster parents ¡(Domestic Relations Law, § 64, later § 110, then § 114, re-enacted as § 115 and later renumbered § 117). Finally in 1963 (L. 1963, ch. 406, eff. March 1, 1964) on recommendation of the Temporary State Commission on the Law of Estates (Second Report 1.2C; N. Y. Legis. Doc., 1963, No. 19) the Legislature provided that the adopted child will inherit not only from but through his adoptive parents. *283 With regard to intestate .succession he was given all of the rights of a natural child.
While the statutes discussed were primarily concerned with intestate succession, these also referred to testate inheritance. The earliest statutes which denied to the adopted child intestate succession also contained a provision, viz. — ‘ ‘ Except that as respects the passing * * * 0f * * * property * * * by wills * * * said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting ”. This provision did not and was not intended to affect the right of the foster parent and the adopted child to devise property inter se. This was intended merely as a rule of construction for dispositions by strangers to the adoption to the foster parent’s children, issue, descendants or any similar generic class designation. The quoted provision was soon amended. The 1887 statute which gave to the adopted child the right to intestate succession provided: “ except that as respects the passing * # * of * * * property * * * by * * * wills * * * dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting so as to defeat the rights of remaindermen ” (remainderman) (the italicized words were added to the 1873 statute by the 1887 statute). This added provision is referred to in the decisions as the “ precautionary addendum ”. The 1887 statute declared the policy-that adopted children were deemed to be included in class dispositions to children, issue, descendants or terms of like import unless by such adoption the rights of remaindermen were defeated.
The * ‘ precautionary addendum ’ ’ remained in the statutes from 1887 to 1963. When in 1963, section 117 was amended to permit intestate succession from and through foster parents, the 1 ‘ precautionary addendum ’ ’ was repealed and replaced by another statute (Decedent Estate Law, § 49, now EPTL 2-1.3, effective only with respect to wills of persons dying after March 1, 1964). The new statute provided that unless a testator “ expresses a contrary intention” a disposition in his will to 6 ‘ issue, lawful issue, children, descendants, heirs, heirs at law, next of kin, distributees (or by any term of like import) ” will include adopted children.
In total summary of these statutory provisions:
1. With respect to intestate succession, from 1873 to 1887 an adopted child did not inherit from his foster parents; from 1887 to March 1,1964 an adopted child inherited from his foster parents but not through his foster parents; after March 1,1964 the *284 adopted child inherited from and through his foster parents to the same extent as natural children.
2. With respect to testate inheritance, no statute has ever or could ever restrict the right of disposition to an adopted child. The statutes have been concerned only with class dispositions, by strangers to the adoption, to “children”, “issue”, “ descendants ” etc. From 1873 to 1887 an adopted child was not included in such a class disposition. From 1887 up to ¡March 1, 1964 the ‘ ‘ precautionary addendum ’ ’ prevented the adopted child from being included in a class disposition only if the device of adoption would defeat the rights of remaindermen. With respect to wills of persons dying after March 1, 1964, the “ precautionary addendum ” has been removed from the statute and a rule of statutory construction for all class dispositions substituted (EPTL 2-1.3). Under that statute a testator making a disposition to issue, lawful issue, children, descendants etc. will be deemed to intend to include adopted children unless he “ specifically provides to the contrary ” (Decedent Estate Law, § 49) or “ expresses a contrary intention ” (EPTL 2-1.3). Both mean the same thing.
Although the new statutes have resolved for the future all problems of intestate and testate succession for the adopted child, the old rules would still apply to wills of persons dying before March 1, 1964. That rule as expressed by decisional law prior to Matter of Park (15 N Y 2d 413 [1965]) could be summarized : If the words of the will taken in its entirety, and the background of facts and circumstances existing when the will was drawn, evidence the testator’s intention to include adopted children, the will will be construed to effectuate that intention (Matter of Upjohn, 304 N. Y. 366, 374-376).
Such a general rule of course led to inconsistent decisions and inconsistency in result. This was particularly true when the will was executed many years before the litigated proceeding and there existed no extrinsic evidence to indicate the particular testator’s intention. Such a case is the instant case: this will was executed in 1913.
Such also was the problem in the landmark decision of Matter of Park (supra), decided in 1965 but interpreting a will executed in 1909. The Park court, after discussing and also distinguishing many prior decisions, made a “ fresh reading ” of the provisions of the adoption statute (Domestic Relations Law, § 117) and its predecessor statutes for “ almost 80 years ”, and concluded that the declaration that foster parent and adopted child “ shall sustain toward each other the legal relation of parent and child and shall have all the * * * duties of that rela *285 tion ’ ’ expressed a public policy of which testators were presumably aware and through which they presumably manifested an intention to include adopted children as “ issue ” etc, in class dispositions.
The court went further. Although considering a 1909 will, the court said (p. 417): “ In the absence of an explicit purpose stated in the will * * * to exclude such a child, he must be deemed included, whether the word 1 heir ’, ‘ child ’, 1 issue ’ or other generic term expressing the parent-child relationship is used ’ ’. The net effect of the Park decision, it may be observed, is to make the policy of new EPTL 2-1.3 (formerly Decedent Estate Law, § 49) retroactive to 1887. Indeed, Park was decided after the adoption of the new statute and it may be suggested that the court after the long series of inconsistent decisions wished to establish some consistency of result between old and new wills in line with developing policy throughout the Nation (Matter of Thompson, 53 N. J. 276; Chase Manhattan Bank v. Mitchell, 53 N. J. 415; Matter of Heard, 49 Cal. 2d 514; Johns v. Cobb, 402 F. 2d 636, cert. den. 393 U. S. 1087).
The Park rule has since been consistently applied (Matter of Silberman, 23 N Y 2d 98; Matter of Nicol, 19 N Y 2d 207; Matter of Johnson, 17 N Y 2d 448; Matter of Nichol, 32 A D 2d 541; cf. Matter of Ricks, 18 N Y 2d 640 [extrinsic evidence establishes contrary intent]).
It follows therefore that courts, in construing wills of persons who died at any time after 1887, must find that dispositions, by a stranger to the adoption, to a class of children, issue, descendants etc., will include adopted children unless testator has specifically provided to the contrary by a clear and unambiguous direction.
We consider the effect of the “precautionary addendum ”. As noted, that addendum has been repealed with respect to the wills of persons dying after March 1,1964. It has however been held to be applicable to wills of persons dying before that date (Matter of Washburn, 24 A D 2d 83, affd. without opn. 17 N Y 2d 895; Matter of Carll, 34 A D 2d 793; Matter of Pelham, 63 Misc 2d 377).
These latter holdings are puzzling. In Matter of Upjohn (304 N. Y. 366, 378-379, supra) the precautionary addendum was held inapplicable even when remainders are defeated if testator intended to include adopted children. The court found such intention from the fact that the child was adopted before testator had executed his will. As Judge Fuld noted, “ The legislature was particularly concerned about fhe perpetration of fraud on the rights of remaindermen ‘ through an adoption for *286 the very purpose of cutting out a remainder ’.” Since Mr. Upjohn however intended to include the adopted child “ the statute — designed ‘ to safeguard the intention of the testator not to defeat it- — -does not apply” (pp. 378-379).
Since Matter of Park (supra) held that testators, with respect to all wills executed after 1887, are presumed to have intended to include adopted children “ in the absence of an explicit purpose stated in the will * * * to exclude such a child ” (15 N Y 2d, at p. 417) it would seem that the precautionary addendum ought not to apply to .such wills. In short, prior to Park the presumption was to exclude in the absence of evidence of intention to include. Park reversed that presumption: — the presumption is to include unless the evidence establishes a purpose to exclude. In the latter case where there is a finding of intention to include adopted children, under Upjohn (supra) the precautionary addendum is inapplicable.
Washburn and Carll (cited supra) maybe distinguished, since in neither case was there a finding by the court of an intention to include adopted children. Here the court has made such an explicit finding based on the Park presumption. In such circumstances the precautionary addendum formerly in section 117 is not applicable at all.
In the foregoing regard, the guardian ad litem for one of the adopted children suggests another basis, apart from the Park presumption, why testator intended to include these adopted children.
In pertinent part with respect to income and corpus, the testator directed “ if any of my sisters shall have so died leaving no descendants then her share * * * shall be paid in equal parts to my other sisters.’’ (Emphasis added.)
Testator’s sister, Jennie, died leaving four natural children. It was not she but one of her natural children, William, who died leaving only his two adopted children. Since the statute (Domestic Relations Law, § 117) is to be liberally and beneficently applied to safeguard the rights of adopted children, the disposition in the will (quoted above) will be construed in strict accord with its specified'conditions and no other (Matter of Kroos, 302 N. Y. 424, 428). The contingency specified was Jennie dying without descendants, not William. Testator had no intention beyond this.
Furthermore, the statutory addendum is inapplicable for another reason. The “remaindermen” safeguarded by the disposition are Jennie’s sisters and their descendants. The adoption by William does not in the slightest disturb their remainder interests, for each group receives one third. The *287 adoption affects only William’s descendants’ share of one third. The share of William’s descendants is not defeated but only reduced by the inclusion of the adopted children.
In total summary with respect to both intestate and testate succession, the new statutes (Domestic Relations Law, § 117 and EPTL 2-1.3), effective with respect to persons dying after March 1, 1964, place the adopted child totally within the bloodline of his new family as if born to the blood.
And, Matter of Park, (supra) commands the same consequence with respect to wills of persons dying after 1887, whether or not remainders are defeated, unless testator specifically directs in his will that adopted children are not to be included in any class disposition. Attorneys are under an obligation to so advise their clients with respect to existing or future wills in which disposition is made to a class mentioned in the statute (EPTL 2-1.3).
Under Matter of Park (supra) the adopted children, in the conceded absence of contrary intent by testator, are “ descendants ” of Jennie Neumann, entitled presently to share per stirpes with the other descendants in the income of the trust and ultimately, upon the termination of the trust, in the corpus.