Reginald S. Oliver, S.
Are the adopted sons of a granddaughter of the testatrix, who died in 1907, to be considered “ descendants, heirs of her body ”?
Louisa M. Aldrich died on August 28, 1907, a resident of Wayne County.
Paragraph Fifth of her 1904 will provided as follows: “ I give and bequeath to my said executors the sum of Ten Thousand Dollars ($10,000.00) of the par value of the Cahaba Coal Mining Company bonds, to be held by them in trust Nevertheless to and for the following purposes; the net annual income thereof to be by them received and paid over to my granddaughter Olive E. Greene during her life. At her death, the principal sum of said bonds, being the said bonds in specie, shall go to her descendants, heirs of her body, share and share alike; if she dies without such descendants, then the said bonds in specie shall be equally divided between my two sons, Truman H. *468 Aldrich and William F. Aldrich, and I give and bequeath the said bonds and the income thereof accordingly. In case the said bonds shall mature or be paid off earlier than is above provided, the amount thereof or the sum received for them shall be invested and reinvested by my said executors as and for the purposes in this clause specified, and the avails of said bonds shall pass under this clause as is provided for the bonds themselves. ’ ’
The life beneficiary, Olive E. Greene Shaw, died in 1972, survived by two adopted sons, William Shaw and Murray H. Shaw, and no blood descendants. The decedent’s two sons, Truman H. Aldrich and William F. Aldrich predeceased the life tenant. Truman was survived by his widow, Fannie, and an adopted daughter, Josephine Aldrich Harris. William was survived by his widow, Helen, and three children, Truman H. Jr., Georgia A. Herron and Marie Antoinette Cravner.
The petitioner requests a construction of decedent’s will with regard to the disposition of the proceeds of the trust in paragraph Fifth. A reading of the entire will produces no statement of intent on the part of Mrs. Aldrich concerning the disposition of her property to adopted children of any of her legatees or devisees.
The blood descendants of decedent propose that the use of the words ‘ ‘ descendants, heirs of her body ’ ’ places a limitation on the disposition only to blood descendents of the granddaughter, that adopted children do not satisfy the requirement, and therefore the trust must go either into the estates of the sons of the testatrix, or in the alternative to her now living heirs as in intestacy.
It is the contention of the life beneficiary’s adopted sons that they qualify and the corpus of the trust and accumulated income should be distributed to them share and share alike.
Had this question been posed prior to Matter of Park (15 N Y 2d 413 [decided May 20, 1965]); Matter of Silberman (23 N Y 2d 98 [decided Oct. 17, 1968]); Matter of Hilton (36 A D 2d 514 [1st Dept., Jan. 14, 1971]) and Matter of Snowden (31 N Y.2d 322 [decided Nov. 2, 1972]) a different result might have been reached.
However, the court concludes that there is no language in the will to indicate an exclusion of adopted children. No intention can be inferred that adopted persons were not to share in decedent’s estate sufficient to overcome the strong public policy existing in New York State since 1887 to include adopted persons within the definition of lineal descendants.
*469 This holding is apparently one of first impression, since none of the parties have been able to cite any New York cases interpreting the phrase “ descendants, heirs of her body ”, nor has the court’s research been fruitful.
Matter of Park (15 N Y 2d 413, supra) made a “ fresh reading ” of the statute relating to the legal rights of foster children. The court held that an adopted child was to be treated in exactly the same fashion as a natural child, and both were included when the creator of a trust used the word “ issue ”. The precautionary addendum contained in section 117 of the Domestic Relations Law as it formerly read prior to 1964 was strictly limited.
In Matter of Silberman (23 N Y 2d 98, supra), the Court of Appeals construed the words “ lawful children ” and “ grandchildren ” as used in decedent’s will to include adopted children, based on the holding in Park which had created a presumption in favor of the adopted child and did away with any ambiguity that might have existed in the use of generic terms to designate persons who might receive distributive shares. Thus, the words “heir”, “child”, “issue” or other generic term, in the absence of a “ clear expression of a purpose ” to the contrary shall include adopted children and grandchildren.
Judge Nathan R. Sobbl made an exhaustive study of the precautionary addendum question in Matter of Henderson (64 Misc 2d 280 [1970]). After considering all the apparently conflicting and “puzzling ” holdings on the subject, Judge Sobbl wrote (p. 286): “ In short, prior to Park the presumption was to exclude in the absence of evidence of intention to include. Park reversed that presumption: — the presumption is to include unless the evidence establishes a purpose to exclude.”
Where a finding is made, as in the instant case, that there is no intention to exclude adopted children, the precautionary addendum formerly in section 117 is not applicable at all. (Matter of Henderson, supra, p. 286.)
Another case which dealt with the problem was Matter of Hilton (59 Misc 2d 969), where the lower court held the word ‘ * descendant ’ ’ as used in a trust could not include an adopted child because such construction would defeat the rights of the remaindermen. The First Department (36 A D 2d 514, supra) reversed the holding, and stated that the Park-Silberman presumption in favor of adopted children extends to circumstances in which the so-called precautionary addendum would otherwise be applicable. Therefore, the court held the adopted daughter *470 to be a “ descendant ” and a contingent remainderman of the trust.
Matter of Snowden (31 N Y 2d 322, supra) is the latest reported case touching on the matter. There the settlor of a trust provided for life income to his wife, upon her death the corpus to be divided per stirpes among their surviving children and the ‘ ‘ issue ’ ’ living at her death of any predeceased children. Judge Ftjld, writing for a unanimous court, again reviewed the problem, and finding no intent to exclude adopted children, held them entitled to share in the trust fund.
EPTL 2-1.3 provides unless ‘1 the creator expresses a contrary intention, a disposition of property to persons described in any instrument as the issue, lawful issue, children, descendants, heirs, heirs at law, next of kin, distributees (or by any term of like import) of the creator or of another, includes: (1) Adopted children and their issue.”
“Generic” terms, words of “like import”, or any other phrase, could include multitudinous combinations of words used by lawyers in preparing wills for execution by their clients. The courts of this State have found adopted children to include heirs, issue, children, grandchildren and descendants. Is not a “ child ” or “ grandchild ” the same as an “ heir of the body ”, expressed in different words?
To conclude this perhaps too long decision, the court wishes again to quote from his brother Sobel (Matter of Henderson, 64 Misc 2d 280, 287, supra):
“ In total summary with respect to both intestate and testate succession, the new statutes (Domestic Relations Law, § 117 and EPTL 2-1.3), effective with respect to persons dying after March 1, 1964, place the adopted child totally within the bloodline of his new family as if born to the blood.
“And, Matter of Park (supra) commands the same consequence with respect to wills of persons dying after 1887, whether or not remainders are defeated, unless testator specifically directs in his will that adopted children are not to be included in any class disposition. Attorneys are under an obligation to so advise their clients with respect to existing or future wills in which disposition is made to a class mentioned in the statute (EPTL 2-1.3).”
The court concludes that the cases prior to Park-Silberman dealing with the question herein have been rendered obsolete by those cases. Furthermore, the public policy of New York as stated by the Court of Appeals overrides any decisions of other jurisdictions, or the Restatement of the Law of Property, 1940 edition.
*471 Therefore, in view of the findings made herein and the ParJc-Silberman presumption, the corpus of the trust fund established by the testatrix is to be distributed in equal shares to William F. Shaw and Murray H. Shaw.