## International Paper Company v.
## Midvale-Heppenstall Company

*Richard Lewis* and *Sam Gerace,* of *Jones, Gregg, Creehan & Gerace,* for plaintiff.

*Milton W. Lamproplos,* of *Eckert, Seamans, Cherin & Mellott,* for defendant General Electric Co.

SILVESTRI, J., July 10, 1973.—This assumpsit-trespass action is now before the court for disposition on the motion for summary judgment by only the defendant, General Electric Company (herein "G.E.").

The purpose of a motion for summary judgment under Pennsylvania Rule of Civil Procedure 1035 is to expedite the disposition of a case. The rule states:

"After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any": Pa.R.C.P. 1035(a).

There is no logical reason for forcing the parties to go to trial when there could be no genuine issue as to a material fact, regardless of the reason for the lack of such issues: Rose v. Food Fair Stores, Inc., 437 Pa. 117, 262 A. 2d 851 (1970); Coal Operators Casualty Co. v. C. T. Easterby & Co., Inc., 440 Pa. 218, 269 A. 2d 671 (1970).

Thus, when passing on a motion for summary judgment, the trial court is simply to determine whether there is a triable issue of fact; it is not to decide any issue of fact: McFadden v. American Oil Company, 215 Pa. Superior Ct. 44, 257 A. 2d 283 (1969). In determining whether or not such genuine issue of a material fact exists, the court must view the evidence most favorable to the party against whom the motion is directed, giving such party the benefit of all favorable inferences, thereby placing the burden of proving the

absence of any factual issue on the movant (Michigan Bank v. Steensen, 211 Pa. Superior Ct. 405, 236 A. 2d 565 (1967); Moore v. Zimmerman, 221 Pa. Superior Ct. 359, 292 A. 2d 458 (1972)) and all doubts are to be resolved against him: Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968); McFadden v. American Oil Company, supra; Moore v. Zimmerman, supra; Kent v. Miller, 222 Pa. Superior Ct. 390, 294 A. 2d 821 (1972).

In considering a motion for summary judgment, a court may rely on the pleadings to ascertain the facts. Controverted facts that appear in the pleadings can be verified by either side by persons who would be competent to testify at the trial of the matter. Supporting affidavits after a motion for summary judgment are acceptable as proof of such facts. All facts in the pleadings and affidavits which are not controverted by the opposing pleadings or affidavits are considered established: Phaff v. Gerner, 451 Pa. 146, 303 A. 2d 826 (1973).

Both plaintiff and G.E. are New York corporations, doing business in the State of New York and throughout the Nation.

On April 10, 1964, plaintiff and G.E. entered into a contract whereby it was agreed that G.E. would construct for plaintiff certain specialized and custom-built equipment consisting of one 25,000 KW, 3,600 R.P.M. double-automatic extraction steam turbine generator unit with certain detailed specifications consistent with G.E.'s standard design and engineering practices. The generator was to be incorporated into a pulp and paper mill being constructed by plaintiff at Chisholm, Maine. The contract provides that the material and equipment were to be sold at the fabrication plant of G.E. in Lynn, Mass., and possession released to plaintiff f.o.b. at that plant; however,

title was not to pass to plaintiff until the material and parts were appropriated to the job. Under exhibit B of the contract, G.E. was to provide technical direction of installation, inspection and instruction for the generator.

An integral part of the generator was a "retaining ring." This part was manufactured and forged by defendant Midvale-Heppenstall Company under an agreement with G.E.

The generator was shipped to plaintiff from Lynn, Mass., on March 20, 1965.[1]

Under a contract with plaintiff, Treadwell Company of New York installed the generator[2] under the supervision of G.E. The generator was placed in service on *October 15, 1965.*[3] Routine maintenance was performed on the generator with the exception of balancing the generator which was done under G.E.'s supervision between April 10 and April 23, 1966.[4]

On January 28, 1967, the generator failed due to the cracking and disintegration of the "retaining ring" forged by defendant Midvale. On January 25, 1972, the within lawsuit was filed to recover (1) damages to the generator, (2) loss of productivity, and (3) the expense of alternative power.

G.E. contends that it is entitled to a summary judgment by reason of the fact that the claim is barred by the contractual limitation of one year or by the appropriate statute of limitations whether New York or Pennsylvania law applies.

The contract provided in paragraphs 12, 17 and paragraph (4) of exhibit B to the contract as follows:

"12. *Warranty.* The Contractor (G.E.) warrants to

---

[1] Affidavit of Joseph A. Whittaker.

[2] Plaintiff's answer to G. E. interrogatory no. 2.

[3] Plaintiff's answer to G. E. interrogatory no. 3.

[4] Plaintiff's answer to G. E. interrogatory no. 34.

the Owner (plaintiff) that the equipment to be constructed hereunder will be free from defects in material, workmanship . . . and will be of a kind and quality designated or described in the contract. The foregoing warranty is exclusive and in lieu of all other warranties whether written, oral, or implied (including any warranty of merchantability or fitness for purpose). If it appears within one year from the . . . completion of installation . . . that the equipment constructed hereunder does not meet the warranties specified above, . . . the contractor shall thereupon correct any defect . . . the liability of the Contractor to the Owner arising out of the supplying of the material and parts and the construction of the said equipment, or its use, whether on warranty, contract or negligence, shall not in any case exceed the cost of correcting defects. . . . and upon the expiration of said one year, all such liability shall terminate . . ."

"17. *Contractor's Liability*. The Contractor's liability on any claim of any kind, including negligence, for any loss or damage arising out of, connected with, or resulting from this contract, or from the performance or breach thereof, or from the construction, sale, delivery . . . or use of any material, parts or equipment covered by this contract shall in no case exceed the consideration allocable to the equipment or part thereof which gives rise to the claim. . . . In no event shall the Contractor be liable for special or consequential damages. . . ."

"Exhibit B, paragraph 4—"Responsibility and Liability—In addition to the Contractor's express warranty of the equipment as set forth in the warranty clause applicable thereto, if any portion of the equipment shall prove to be damaged as a direct result of the defective technical direction of installation . . . within one year from the date of first commercial

operation or completion of installation, whichever shall first occur, . . . the Contractor . . . as its sole obligation will correct such damage at its own expense . . . the Contractor's liability for any claims of any kind arising out of or connected with technical direction of installation . . . whether in contract, tort (including negligence), or otherwise, shall in no case exceed the cost of repairing . . . and upon the expiration of said one year all liability for technical direction of installation . . . shall terminate."

Paragraph 18 of the contract provides:

"Governing Law . . . This contract shall be governed, construed and interpreted under the Laws of New York . . ."

Paragraph 19 of the contract provides:

"Whole Agreement. This document expresses the complete intent of the parties hereto with respect to the subject matter hereof. There are no understandings or agreements with respect to such subject matter not included in this agreement."

The basic contract is a complex, lengthy document constituting 13 pages, with exhibit A attached being the contract, proposals and specifications of 17 pages and exhibit B attached entitled "Technical Direction of Installation, Inspection and Instruction" being four pages and exhibit C attached labeled "Insurance" consisting of seven pages. With the exception of a few nonpertinent paragraphs, only exhibit C to the contract appears to be "boiler plate."

Roland C. Radice, staff legal counsel of G.E. during the period of time between February and September 1964, negotiated the terms and conditions of the contract with Charles Myneder, staff legal counsel to plaintiff and J. Bacon of the insurance department of plaintiff. Numerous personal meetings occurred and telephone and postal communications were made between them as to substance and form of the con-

tract; further, numerous drafts were exchanged; the contract as executed was agreed on only after being fully negotiated and freely bargained for in good faith and at arms length.[5] Both attorneys were employes of the parties and worked in their respective New York offices.

The contract was executed in New York, possession of the equipment was given to plaintiff in Lynn, Mass., the retaining ring was forged in Pennsylvania, the equipment was installed, used and the damage occurred in Maine, title passed in Maine and the lawsuit was filed in Pennsylvania.

Our threshold inquiry is to determine which State jurisdiction's law should apply.

Procedurally, the rules of procedure of the forum are controlling. The party who brings the action subjects himself to the procedural rules of the action State and in determining questions of substantive law, whether of the forum State or a foreign State, their determination must be under the procedural guidelines of the forum State. Thus, in considering the merits of the within motion for summary judgment, we do so under the Rule 1035, governing summary judgments and the case law thereunder as hereinabove set forth.

The law applicable to what law should govern is clear and settled. Section 187 of Restatement 2d, Conflict of Laws, entitled Law of the State Chosen by the Parties, makes effective the choice of the parties as set forth in their contract and provides as follows:

"(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."

Although this section of Restatement has not been

---

[5] Affidavit of Roland C. Radice.

directly before our appellate courts, we believe it to be sound law and the law in Pennsylvania.

The parties freely bargained that the contract shall be governed, construed and interpreted under the laws of New York. The parties knew that the generator and its parts were not going to be manufactured in New York; they knew that the equipment was to pass into the possession of plaintiff, f.o.b. cars at the point of shipment; they knew that the shipment would cross several State lines; they knew that title was not to pass to plaintiff until the parts were appropriated to the job; they knew that the installation was to be in Maine; the contract recitals list the New York addresses of the parties, thus, they knew that all communications re the contract and payment were going to be done in New York. Being aware of the interstate nature of the transaction and each doing business in numerous States, the possibility of a conflict of laws was an issue which they specifically resolved by the explicit provision in the contract. There is no question that the substantive law to be applied to the contractual rights and duties of the parties is the law of New York.

Even in absence of the specific provision in the contract that New York law would apply, the result would be the same using the "Interest Analysis" approach which is used in Pennsylvania under the guidelines set forth in Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A. 2d 796 (1964), which holds that where several States have a significant relationship to the cause of action, the court must look to the underlying interest of each jurisdiction and determine which has the greatest compelling interest in the outcome of the matter. It is apparent that New York has the most substantial interest. The corporations are domiciled in New York; the negotiating parties were staff attorneys located in New York; the negotiations took place

in New York; the contract was executed in New York; although the subject matter was installed in Maine, payment therefor was to be made in New York and the business of the parties is headquartered in New York. Thus, since we are dealing with rights and liabilities arising out of a contract, New York's interest in the integrity and validity of contracts emanating within its borders and directly affecting its residents and citizens is greater than the interest of either Pennsylvania or Maine.

Count I of the complaint is in assumpsit, and is based upon the warranty contained in the contract. Count II is against Midvale. Count III is in trespass and pleads a cause of action based on common law negligence.

The injury and damage to the generator has a basis in tort; however, the root of the tort is the contract of the parties. Procedurally in Pennsylvania, a party can waive the tort and sue in assumpsit where the tort springs, as here, from a contractual relationship. Further, under Pa. R.C.P. 1020 a party may now join in one complaint counts in assumpsit and trespass. Since the relationship of the parties and the subject matter of the causes of action arise out of the contract, both the contract rights and duties and the tort liability is governed by applicable New York law.

Paragraph 12, "Warranty" and paragraph 4, "Responsibility and Liability" of exhibit B of the contract between plaintiff and G.E. provide that the liability of G.E. for any defects in material and workmanship or for any damage as a direct result of their technical direction of installation shall terminate at the expiration of one year from the date of the installation of the generator. The warranty as to defects in material and workmanship is exclusive and in lieu of all other warranties.

The construction of a plain contract, that is, one which is clear and explicit in its terms, involves only a question of law: Wood v. Glens Falls Automobile Co., 161 N.Y.S. 808, 174 App. Div. 830; Saitch v. Kelley, 139 N.Y. Supp. 534, 154 App. Div. 864; Nucci v. Warshaw Construction Corp., 234 N.Y. Supp. 2d 196, 12 N. Y. 2d 16, 186 N.E. 2d 401. Where the language of a contract is unambiguous and the words are plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation, for effect must be given to the intent as indicated by the language itself: Western Union Tel. Co. v. American Communications Assoc., C.I.O., 299 N. Y. 177, 86 N. E. 2d 162; First National Bank v. National Surety Co., 228 N. Y. 469, 127 N. E. 479; Seifert, Hirshorn and Packman, Inc. v. Insurance Co. of North America, 321 N. Y. Supp. 2d 815, 36 App. Div. 2d 506.

The language of the "Warranty" and of "Responsibility and Liability" is plain, clear and free of any ambiguity. In language free of any doubt, G.E. was to be responsible for defects in material and workmanship and for defective technical direction of installation of the generator within one year from the date of installation. This intent was reinforced by the use of the additional language ". . . and upon the expiration of said one year, all such liability shall terminate."

Where the claim is based on a contract as in Count I of the within complaint, the applicable statute of limitations is six years from the date of sale or delivery: New York C. P. L. R. 213 (Sub. 2) (McKinney 1972); Tischler Roofing & Sheet Metal Works Co., Inc. v. Sicolo Garage Inc., 316 N. Y. Supp. 2d 453, 64 Misc. 2d 285 (1970); Mendel v. Pittsburgh Plate Glass Co., 305 N. Y. Supp. 2d 490, 25 N. Y. 2d 340 (1969). However, a shorter limitation may be prescribed by the parties by their written contract (Brown & Guenther

v. North Queensview Homes, Inc., 239 N. Y. Supp. 2d 482, 18 App. Div. 2d 327; Soviero Bros. Contracting Corp. v. New York, 142 N. Y. Supp. 2d 508, 286 App. Div. 435, affirmed, 2 N. Y. 2d 924; Schram v. Cotton, 12 N. Y. Supp. 2d 918, 257 App. Div. 283), provided the agreed limitation is reasonable; Greenhill v. Delano, 184 N. Y. Supp. 617, 193 App. Div. 842; Matelsky v. Globe Indem., 294 N. Y. Supp. 588, 162 N. Y. Misc. 326.

G.E. propounded the following interrogatory to the plaintiff.

"3. 'When was the generator actually put into service? If there was a delay between the date of installation and the date of placement into service, explain the reason or cause for the delay.' "

Plaintiff answered as follows:

"The unit was placed in service on October 15, 1965. *There was no delay between the completion of installation and the start up.*"*

It is clearly established by the foregoing interrogatory and answer thereto that the installation of the generator was complete on or before October 15, 1965. Likewise, the sale or delivery of the generator necessarily would have been completed by the same date. The one-year period of contractual limitation expired on October 15, 1966; the six-year period under New York's statute of limitation expired not later than October 15, 1971. This lawsuit was not filed until January 25, 1972. The warranties were stated explicitly to run from the date of the installation. If the time period is calculated from the date of sale, delivery or of the installation, the claim is barred by both the statutory limitation and the contractual limitation.

If the time period is calculated from the date of the

---

* Italics supplied.

breakdown of the generator, i.e., January 28, 1967, the lawsuit would be within the period of the statute of limitations but beyond the contractual limitation. G.E. and plaintiff agreed to a limitation of one year, being shorter than the six-year period of limitation. It is stated clearly and unequivocally twice in paragraph 12 and twice in paragraph 4 of exhibit B of the contract. They could not have declared their intent more plainly: Dorff v. Taya, 185 N. Y. Supp. 174, 194 App. Div. 278; Sharp v. Foley Bros., Inc., 69 N. Y. Supp. 2d 514. Considering the provisions of the entire contract, the terms of its performance, the negotiations of the contract by staff attorneys of the parties who presumably were knowledgeable in New York law and the equality of the parties' bargaining positions, we cannot say that the contractual limitation of one year is unreasonable. Further, if we should calculate the period of limitation from any date other than the installation date, we would be rewriting the contract for the parties, since they specifically agreed that the warranty period was to begin upon completion of installation. This we cannot do.

The claim of plaintiff against G.E. under the assumpsit count of the complaint is barred.

The claim of plaintiff under Count III in trespass is also barred.

In paragraph 10, under the assumpsit count, plaintiff pleaded, ". . . that the said material was defective in general and in particular in that the retaining ring was faulty and defective at the time of installation." In the trespass count, plaintiff in paragraph 18 incorporates certain paragraphs of the assumpsit count but *does not* incorporate paragraph 10. Assuming paragraph 10 is sufficient to plead strict liability, it was not made part of the trespass count. The count in trespass in paragraph 20 lists the alleged negligent conduct

of G.E., all of which is common law negligence. Hence, the issue of strict liability argued by plaintiff is not in the case by reason of failure to plead the same.

Although the contract is clear and free of any ambiguity as to the limitation on liability under warranty, such is not the case as to negligence. Paragraphs 12 and 17 use the word "negligence" in the context of limiting the amount of damages for liability rather than the period of foreclosing liability.

The contract clearly states, as hereinabove noted, that New York law governs any claim plaintiff may have against G.E. including a claim for negligence. The statute of limitation in tort under New York law is three years from the date of injury: New York C. P. L. R. 214 (Sub. 4) (McKinney 1972); Durant v. Grange Silo Co., 207 N. Y. Supp. 2d 691, 12 App. Div. 2d 694 (1960). The incident giving rise to the claim in trespass occurred on January 28, 1967. The three years expired on January 28, 1970, and this action was not brought until January 25, 1972.

In reply to G.E.'s new matter, plaintiff raised the issue that the conduct of G.E. tolled the statute of limitations. The reply does not set forth any facts or conduct on the part of G.E. which would toll the statute of limitations. Plaintiff did file a supporting affidavit of Roy F. Bourgault, a professor of mechanical engineering, who was employed by plaintiff in *February, 1967,* within a month after the incident, to investigate the cause of the failure of the retaining ring. Professor Bourgault's affidavit states that at the time of his employ, G.E. had the retaining ring; that he met with a G.E. representative, reviewed testing procedures and it was agreed that G.E. would preserve one-half of the ring for his independent research; he was further told that determining the cause of the failure of the ring might require in excess of one year; that he refrained

from undertaking an independent investigation because G.E. wished to determine the cause of the retaining ring failure and would undertake an investigation to determine the cause; that G.E. agreed to share the results of its investigation with him; that he met with various officials of G.E. during the time G.E. was conducting its investigation and was given the opportunity to check the progress of the investigation; that he did not get G.E.'s findings until G.E. issued its report dated June 10, 1968; that he began his own testing on October 10, 1968, and made findings contrary to those of G.E.; that he completed his investigation on June 1, 1970.

The affidavit by Professor Bourgault does not support any conduct on the part of G.E. which would constitute a tolling of the statute of limitation. There was no fraud, concealment or misrepresentation by G.E. To the contrary, there was periodic contact between Professor Bourgault and G.E. as to the progress of the testing. Professor Bourgault received the remaining parts of the retaining ring from G.E. on October 10, 1968, and the statute of limitation would not expire until January 28, 1970. There is no conduct alleged either in the pleadings or affidavit that G.E. did anything to hinder or delay the investigation of Professor Bourgault after October 10, 1968, while there was still about 15 months before the statute of limitations would expire. Further, the retaining ring was the property of plaintiff who could have demanded its return at any time. In addition, plaintiff could have filed a cautionary action at any time with broad allegations seeking requisite amendments later if necessary. The contention of plaintiff that the conduct of G.E. relative to the retaining ring tolled the statute of limitations is totally devoid of any merit.

For the foregoing reasons, G.E.'s motion for summary judgment will be granted.

## ORDER

And now, July 10, 1973, after oral argument, consideration of the briefs of the parties, review of the pleadings, answers to interrogatories, admissions on file and supporting affidavits, it is hereby ordered and decreed that the motion of General Electric Company for summary judgment be and is hereby granted.